IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE, SOUTHERN DIVISION
— — —

| | |
|---|---|
| C.S., a minor, by and through her parents and next of kin, TIFFANY ELLEN SORENSEN and KEVIN STRICKLAND, both individually and as representatives,<br><br>   *Plaintiffs,*<br><br>v.<br><br>REGIONAL OBSTETRICAL CONSULTANTS, P.C.; UNION GENERAL AFFILIATED SERVICES, LLC; JOSEPH HENRY KIPIKASA, MD; and BENJAMIN J. HARRIS, MD,<br><br>   *Defendants*.<br>_____/ | No. _____<br><br>**JURY DEMANDED** |

## COMPLAINT

Come the Plaintiffs, C.S., a minor, by and through her parents and next of kin, Tiffany Ellen Sorensen and Kevin Strickland, both individually and as representatives, and for cause of action, aver as follows:

### I. Parties, Citizenship & Service of Process

1. The Plaintiffs, Tiffany Ellen Sorensen ("Ms. Sorensen") and Kevin Strickland ("Mr. Strickland"), along with their daughter, (initials) C.S., reside in Clay County, North Carolina.

2. Plaintiffs are citizens of North Carolina for purposes of diversity jurisdiction.

3. At all times material, Ms. Sorensen and Mr. Strickland were, and remain, husband and wife.

4. Upon information and belief, the Defendant, Regional Obstetrical Consultants, P.C. ("ROC"), is a corporation formed under the laws of the State of Tennessee, with its principal office in Hamilton County, Tennessee.

5. Defendant ROC is being asked to waive service under Fed. R. Civ. P. 4; otherwise, upon information and belief, Defendant ROC may be served with process through its registered agent: Hatfield, Amanda Leigh, at 902 McCallie Ave., Chattanooga, TN 37403-2724.

6. Defendant ROC is a citizen of Tennessee for purposes of diversity jurisdiction.

7. At all times relevant hereto, Defendant ROC did business as, among other things, "ROC."

8. At all times relevant hereto, and during the year 2021, the number (423) 664-4466 has been a fax line for Defendant ROC.

9. Upon information and belief, the Defendant, Joseph Henry Kipikasa, MD ("Defendant Kipikasa"), is a physician licensed in Tennessee who specializes in Obstetrics and Gynecology and Maternal Fetal Medicine and practices in, among other locations, Hamilton County, Tennessee.

10. Defendant Kipikasa is being asked to waive service under Fed. R. Civ. P. 4; otherwise, he may be served with process at the practice address listed on his Tennessee Department of Health ("TDOH") practitioner profile: 902 McCallie Avenue, Chattanooga, TN 37403.

11. At all times relevant hereto, Defendant Kipikasa was acting as a member, employee, officer, agent, apparent agent, and/or servant of Defendant ROC.

12. Upon information and belief, Defendant Kipikasa resides in Hamilton County, Tennessee.

13. Defendant Kipikasa is a citizen of Tennessee for purposes of diversity jurisdiction.

14. Upon information and belief, the Defendant, Union General Affiliated Services, LLC ("Union General Women's Health"), is a foreign limited liability company formed under the laws of the State of Georgia, with its principal office at 35 Hospital Rd., Blairsville, GA 30512.

15. Defendant Union General Women's Health is being asked to waive service under Fed. R. Civ. P. 4; otherwise, Defendant Union General Women's Health may be served with process through its attorney in this matter who has indicated she is authorized to accept service for said Defendant.

16. Upon information and belief, the sole member of Defendant Union General Women's Health is a corporation formed under the laws of the State of Georgia with its principal office in Georgia, meaning, the citizenship of Defendant Union General Women's Health is diverse from that of Plaintiffs.

17. Upon information and belief, the Defendant, Benjamin J. Harris, MD ("Defendant Harris"), is a physician with a practice address at 123 Weaver Road, Suite A1, Blairsville, Georgia, 30512.

18. Defendant Harris is being asked to waive service under Fed. R. Civ. P. 4; otherwise, Defendant Harris may be served with process through his attorney in this matter who has indicated she is authorized to accept service for said Defendant.

19. At all times relevant hereto, Defendant Harris was acting as a member, employee, officer, agent, apparent agent, and/or servant of Defendant Union General Women's Health.

20. Upon information and belief, Defendant Harris resides in Fannin County, Georgia.

21. Defendant Harris is a citizen of Georgia for purposes of diversity jurisdiction.

## II. Jurisdiction & Venue

22. As noted herein, this lawsuit concerns claims that health care providers have caused an injury related to the provision of and/or failure to provide health care services to Ms. Sorensen and to C.S.. More specifically, Plaintiffs allege negligent acts and omissions in the coordination of care by health care providers involved in the prenatal care and treatment for Ms. Sorensen and C.S., and in the delivery planning and precautions taken for Ms. Sorensen and C.S., wherein the same occurred across state boundaries, including but not limited to, by way of telemedicine and other means of wire communication across multiple jurisdictions, namely, Georgia and Tennessee.

23. Under Tennessee's Long-Arm Statute, T.C.A. §20-2-225, wherein personal jurisdiction may be exercised on any basis not inconsistent with the constitution of Tennessee or of the United States, this Court has personal jurisdiction over Defendant ROC and Defendant Kipikasa because of the substantial connection between the alleged acts and omissions directed towards same, and the State of Tennessee, as evidenced herein. In the event any defendant challenges personal jurisdiction, Plaintiffs would and do hereby move for leave to amend to set forth additional support and/or for expedited discovery to be permitted on this issue.

24. Further, under Tennessee's Long-Arm Statute, this Court has personal jurisdiction over Defendant Union General Women's Health.

25. Further, under Tennessee's Long-Arm Statute, this Court has personal jurisdiction over Defendant Harris.

26. Defendant Harris was at all times acting within the course and scope of his employment and/or authority for Defendant Union General Women's Health when he saw Ms. Sorensen for her regular prenatal obstetrical care and treatment. In connection with Ms. Sorensen's pregnancy with C.S., the plan was for the delivery to occur at Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System's Erlanger Baroness Hospital, which as Defendant Harris knew, is a teaching hospital located in Tennessee. As is also set forth in more detail below, during this pregnancy, Defendant Harris referred Ms. Sorensen to a maternal & fetal medicine specialist, Defendant Kipikasa, who works for Defendant ROC, both based in Tennessee. During Ms. Sorensen's time under the care of

— 5 —

Case 1:23-cv-00042-CEA-MJD   Document 1   Filed 02/22/23   Page 5 of 20   PageID #: 5

Defendant ROC, the plan of the Tennessee provider utilized routine visits with Defendant Harris for surveillance, and healthcare services were also provided during this pregnancy via telemedicine from Tennessee to Ms. Sorensen while she was located with and/or near Defendant Harris. Upon information and belief, Defendant Harris and/or his group earned revenue off these visits or encounters wherein medical care and treatment were provided collaboratively between a physician in Tennessee and a physician outside Tennessee leading to a delivery planned to occur in Tennessee.

27. Upon information and belief, Defendant Harris is or at least in multiple years has been "in-network" or a PPO provider with one of Tennessee's largest health insurance companies, BlueCross BlueShield of Tennessee, which is based in Chattanooga, Tennessee.

28. Upon information and belief, Defendant Harris's practice has generated revenue from Tennessee health insurance plans, Tennessee-based patients, from providing collaborative prenatal care to patients along with Tennessee-providers like those at ROC, and in being involved at one stage or another in the care and treatment of patients who plan to and/or do deliver their children in a Tennessee facility.

29. In ordering Group B Streptococcus ("GBS") testing for Ms. Sorensen, Defendant Harris availed himself of PathGroup Labs, LLC, at 1010 Airport Center Dr., Suite C, Nashville, Tennessee, 37217, whose laboratory director was Benton R. Middleman, MD, a medical doctor licensed in the State of Tennessee, performed by

Associated Pathologists, LLC, d/b/a PathGroup, at 1010 Airport Center Dr., Suite M, Nashville, TN 37217, whose laboratory director was Pranil K. Chandra, DO, an osteopathic physician licensed in the State of Tennessee.

30. This case concerns injuries related to the provision of, and failure to provide, health care services to Ms. Sorensen and to C.S., the child of Ms. Sorensen and Mr. Strickland.

31. This cause of action arose in Hamilton County, Tennessee, *see* 28 U.S.C. §1391(b)(2), or in the alternative venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(3).

32. This Court has jurisdiction over the parties and there is subject matter jurisdiction based upon the complete diversity of citizenship between the Plaintiffs, and the Defendants, given the amount in controversy is in excess of seventy five thousand dollars exclusive of interest and costs. *See* 28 U.S.C. 1332; T.C.A. §§ 16-10-101, 20-2-225(2); 29-20-307 & U.S. Const. amend. XIX, §1.

### III. Facts & Claims

33. Ms. Sorensen was a 33-year-old G9P3053 when she first presented to Defendant Harris at Defendant Union General Women's Health's office.

34. Ms. Sorensen thereafter continued to see Defendant Harris for the duration of this pregnancy for her routine prenatal and obstetrical care.

35. Ms. Sorensen's antenatal risk factors included a selective Immunoglobulin A (IgA) deficiency.

— 7 —

36. On April 13, 2021, when Ms. Sorensen was at approximately 8.5 weeks' gestation, Defendant Kipikasa saw Ms. Sorensen on referral from Defendant Harris due to Ms. Sorensen's selective IgA deficiency.

37. Ms. Sorensen thereafter had regular follow up with Defendant ROC, including ultrasound results showing normal growth and anatomy for C.S., as well as MaterniT 21 Plus testing which was negative for genetic disorders with C.S..

38. Except for a history of recurrent urinary tract infections, Ms. Sorensen's routine obstetrical care during this pregnancy was otherwise unremarkable.

39. On October 20, 2021, at Defendant Union General Women's Health according to Defendant Harris's plan, Ms. Sorensen was given antenatal screening for Streptococcus B.

40. On the October 20, 2021, visit to Defendant Harris, follow-up was arranged for one week at Defendant Union General Women's Health, and it was noted the patient had an appointment with Defendant ROC later that day.

41. The Molecular Group B Strep by PCR obtained October 20, 2021, was positive.

42. The results of the positive Group B Strep test taken October 20, 2021, for Ms. Sorensen were reported to Defendant Harris on October 22, 2021.

43. The results of the positive Group B Strep test taken October 20, 2021, for Ms. Sorensen were faxed from Defendant Union General Women's Health to Defendant ROC on October 25, 2021.

44. The records of Defendant Union General Women's Health reflect that the October 25, 2021, fax of Ms. Sorensen's positive Group B Strep test results from Defendant Union General Women's Health to Defendant ROC was successfully transmitted.

45. At no point prior to the delivery of C.S. was Ms. Sorensen informed of her positive Group B Strep test results.

46. Unbeknownst to Ms. Sorensen and Mr. Strickland, Ms. Sorensen tested positive for GBS during her pregnancy with C.S..

47. Ms. Sorensen returned to see Defendant Harris on October 27, 2021, for routine follow up. She was scheduled for induction the following day at Erlanger by Defendant ROC. The October 27, 2021, examination of the mother and fetus were normal. In the records for this visit, under the section "Prenatal Labs" it states, "GBS Result OB: Not Done."

48. Defendant Harris and Defendant Union General Women's Health did not transmit Ms. Sorensen's prenatal records to Erlanger in anticipation of her admission for induction.

49. On October 28, 2021, once at Erlanger, an obstetrics history and physical was performed wherein it was noted Ms. Sorensen's GBS status was "unknown."

50. Ms. Sorensen was admitted for induction under epidural.

51. FHR tracing was reactive.

52. A labor progress note from October 29, 2021 at 2:23 a.m., which was later co-signed by Defendant Kipikasa, notes that amniotic fluid was clear when

— 9 —

membranes were artificially ruptured. The FHR tracings were Category I and remained so during the course of labor.

53. A note from that same date at 6:47 a.m. documents adequate progress with stable FHR tracings.

54. There is no indication of fetal hypoxia based on FHR tracings.

55. Ms. Sorensen did not receive ampicillin prophylaxis for this labor and delivery.

56. C.S. was born via vaginal, spontaneous delivery on October 29, 2021 at 3:10 p.m.

57. The infant's APGAR scores were 9 and 9 at one and five minutes, respectively.

58. Following the delivery, C.S. was transferred to the well-baby nursery for routine care.

59. On October 30, 2021, according to a nursing note timed at 4:06 p.m., C.S. was found by hospital nursing staff in the patient's room, and she was purple. Upon being found in distress by hospital nursing staff, the infant was rushed out of the room by the RN who carried the infant in her arms, and Ms. Sorensen personally witnessed this and was caused great distress as a result. At 3:09 p.m., the infant was noted to be blue and apneic, with no heart rate, and compressions were started and a code blue initiated. NICU personnel had reported and were in the newborn nursery by 3:10 p.m.

60. After approximately 15 minutes of CPR, with resuscitation including with epinephrine, fluids, and intubation, C.S. was found to be extremely acidotic with a blood gas of 6.66/64/30/7.3/-29 and a lactate of 17.6. She was admitted to the NICU in critical condition, where she started seizing. A lumbar puncture was attempted but unsuccessful.

61. Blood cultures were positive for GBS, and C.S. was diagnosed with septic shock and presumed meningitis.

62. C.S. required prolonged ventilatory and pressor support. She remained encephalopathic and imaging studies performed were consistent with hypoxic ischemic encephalopathy secondary to cardiac arrest.

63. C.S. has since required outpatient follow-up care and treatment related to these injuries, including neurology services, wherein her neurologist has noted that C.S. continues to still suffer from developmental delay, seizure disorder presently controlled on medication, and hyperreflexia suggestive of cerebral palsy.

64. Ms. Sorensen never should have been allowed to deliver C.S. vaginally and without the appropriate prophylactic antibiotic treatment that is indicated according to the standard of care for a patient who has a known positive test result for Group B Strep.

65. For the conflicts of laws choice in this case, at least for the elements of the claims being asserted, Georgia has the most significant relationship.

66. In this case, O.C.G.A. §51-1-27 applies, and same was breached by Defendants.

67. In the alternative, at least for the elements of the claims being asserted, Tennessee has the most significant relationship.

68. In the alternative, T.C.A. §29-26-115 applies, and same was breached by Defendants.

69. More specifically, and regardless of which law applies, Defendant ROC deviated from the applicable standard of care for a maternal fetal medicine practice applicable to it and its members, employees, officers, agents, apparent agents, and/or servants, during the time of the relevant care and treatment to this case, including as such standard existed for Union County, Georgia, for Hamilton County, Tennessee, and/or for both communities.

70. Regardless of which law applies, Defendant Kipikasa deviated from the applicable standard of care for an obstetrician and gynecologist and maternal fetal medicine specialist during the time of the relevant care and treatment to this case, including as such standard existed for Union County, Georgia, for Hamilton County, Tennessee, and/or for both communities.

71. Regardless of which law applies, Defendant Union General Women's Health deviated from the applicable standard of care for an obstetrician and gynecology practice applicable to it and its members, employees, officers, agents, apparent agents, and/or servants during the time of the relevant care and treatment to this case, including as such standard existed for Union County, Georgia, for Hamilton County, Tennessee, and/or for both communities.

72. Regardless of which law applies, Defendant Harris deviated from the applicable standard of care for an obstetrician and gynecologist during the time of the relevant care and treatment to this case, including as such standard existed for Union County, Georgia, for Hamilton County, Tennessee, and/or for both communities.

73. The deviations from the applicable standard of care by Defendant ROC and Defendant Kipikasa, and for which Defendant ROC is responsible, include but are not limited to the following:

   a. By failing to inform Ms. Sorensen of her positive GBS result;

   b. By failing to have in place appropriate policies and procedures to make sure that faxes with important test results sent from other providers were timely reviewed, conveyed to the appropriate providers, and acted upon; or if the same were in place, by failing to provide appropriate training and resources to carry them out; or if appropriate policies and procedures were in place and appropriate training and resources were provided, by failing to actually follow said policies and procedures in this case;

   c. By failing to timely review, convey to appropriate providers, and act upon the results of Ms. Sorensen's positive GBS test, as faxed to Defendant ROC by Defendant Union General Women's Health on October 25, 2021;

— 13 —

d. By failing to make sure that Ms. Sorensen's complete prenatal records, to include the positive GBS result, were faxed to Erlanger in a timely manner and incorporated into the delivery plan;

e. By failing to provide the results of Ms. Sorensen's positive GBS test to the appropriate persons at Erlanger prior to labor and delivery; and

f. By failing to act at all times with the minimum standard of acceptable professional practice as far as it relates to the systems in place to coordinate care and treatment amongst providers, across state lines, for the delivery of C.S. those providers planned for Erlanger.

74. The deviations from the applicable standard of care by Defendant Union General Women's Health and Defendant Harris, and for which Defendant Union General Women's Health is responsible, include but are not limited to the following:

a. By failing to inform Ms. Sorensen of her positive GBS result;

b. By failing to have in place appropriate policies and procedures to make sure that Defendant ROC and Defendant Kipikasa received and were aware of the positive GBS result for Ms. Sorensen; or if the same were in place, by failing to provide appropriate training and resources to carry them out; or if appropriate policies and procedures were in place and appropriate training and resources were provided, by failing to actually follow said policies and procedures in this case;

c. By failing to record the positive GBS result, once on notice of same, in all subsequent records and notes, including the progress note of October 27, 2021;

d. By failing to make sure that Ms. Sorensen's complete prenatal records, to include the positive GBS result, were faxed to Erlanger in a timely manner and incorporated into the delivery plan; and

e. By failing to act at all times with the minimum standard of acceptable professional practice as far as it relates to the systems in place to coordinate care and treatment amongst providers, across state lines, for the delivery of C.S. those providers planned for Erlanger.

75. Defendant ROC is responsible based on *respondeat superior*, vicarious liability, actual agency, apparent agency, and/or the borrowed servant doctrine for acts and omissions of each of its members, employees, officers, agents, apparent agents, and/or servants.

76. Defendant Union General Women's Health is responsible based on *respondeat superior*, vicarious liability, actual agency, apparent agency, and/or the borrowed servant doctrine for acts and omissions of each of its members, employees, officers, agents, apparent agents, and/or servants.

### IV. Damages

77. Due to the deviations referenced herein, C.S. has been caused to suffer catastrophic, severe, and permanent injuries. Such injuries include pain and suffering (past and future), lost earning capacity, permanent disability, physical impairment, loss of enjoyment of life (past and future), emotional distress, and costs of medical care and other out of pocket expenses which C.S. and Plaintiffs have incurred and will continue to incur into the future.

78. Also, by virtue of the way in which Ms. Sorensen witnessed serious injury to her daughter which resulted from Defendants' negligence and caused serious emotional injury and damages to Ms. Sorensen, Defendants are liable to Ms. Sorensen for negligent infliction of emotional distress, and to Mr. Strickland for his loss of consortium damages arising therefrom, as he is now and at all times relevant has been married to Ms. Sorensen.

79. All the Plaintiffs' damages were a direct and proximate cause of the negligence described herein.

### V. Procedural/Misc., Including Prayer For Relief

80. Plaintiffs also reserve the right to aver, pursuant to the Georgia Constitution, or in the alternative, the Tennessee Constitution, and in either case, under the United States Constitution, that any attempt to statutorily cap non-economic damages in this matter would be unconstitutional, both as such statute would be considered on its face, and as it would otherwise apply to Plaintiffs.

Indeed, in furtherance of 28 U.S.C. §2403, Plaintiffs request a declaration or determination by the Court as to what state's law is to apply to enable Plaintiffs to plead more specific constitutional challenges, to avoid waiver. Alternatively, Plaintiffs request that the Court's case management deadlines for this matter include a deadline for amendments to the pleadings wherein constitutional challenges, as appropriate, can be raised following appropriate discovery and the determination of which state's substantive law will apply. In any event, out of an abundance of caution, Plaintiffs give notice of their reliance on the authority in *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 691 S.E.2d 218 (Ga. 2010) and the holding that O.C.G.A. §51-13-1 is unconstitutional, and consistent with Fed. R. Civ. P. 5.1, are serving a copy of the Complaint in this matter by certified or registered mail to the Attorney General for the State of Georgia. *See* (Affidavit of Gilad Gross, M.D., attached hereto as **Exhibit A**).

81. Regardless of any conflict of laws choice in this matter, as it relates to any procedural requirements that might apply, state-law pleading requirements which compete or conflict with Rule 8 and other aspects of the *Federal Rules of Civil Procedure* should be deemed preempted. Alternatively, but primarily out of an abundance of caution, Plaintiffs note their compliance herein with multiple procedural steps applicable under state law for medical negligence cases.

82. For instance, without conceding its applicability, Plaintiffs, through counsel, pursuant to O.C.G.A. §9-11-9.1, attach the Affidavit of Gilad Gross, M.D., which sets forth at least one act or omission related to the care and treatment of

the Plaintiffs by Defendants, which said act proximately caused or contributed to Plaintiffs' injuries, and which act illustrates Defendants' failure to furnish that degree of skill and care required of the medical profession in general.

83. Likewise, without conceding its applicability, and in the alternative, Plaintiffs, through counsel, have complied with the requirements of T.C.A. § 29-26-121 by giving written notice of each potential claim to each health care provider named herein as a Defendant at least sixty (60) days prior to the filing of this Complaint.

84. By letter sent certified mail, return receipt requested, on October 25, 2022, pre-suit notice was given to Defendant ROC that a potential claim for health care liability was being asserted against it.

85. By letter sent certified mail, return receipt requested, on October 25, 2022, pre-suit notice was given to Defendant Kipikasa that a potential claim for health care liability was being asserted against him.

86. By letter sent certified mail, return receipt requested, on October 25, 2022, pre-suit notice was given to Defendant Union General Women's Health that a potential claim for health care liability was being asserted against it.

87. By letter sent certified mail, return receipt requested, on October 25, 2022, pre-suit notice was given to Defendant Harris that a potential claim for health care liability was being asserted against it.

88. The above-referenced pre-suit notices complied with Tenn. Code Ann. § 29-26-121(a), to the extent it applies.

89. Documentation showing the Plaintiffs' compliance with said statute, including affidavit of the individual sending the notice, is attached hereto as **EXHIBIT B**.

90. Without conceding the applicability of T.C.A. §29-26-122, Plaintiffs note that a Certificate of Good Faith is attached hereto as **EXHIBIT C.**

91. The aforementioned Certificate of Good Faith fully complies with all requirements of T.C.A. § 29-26-122, to the extent applicable.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a. That proper process be issued upon Defendants and that they be required to answer this Complaint within the time allotted by law;

b. For a jury of six (6) to try this cause;

c. For compensatory damages for C.S. in an amount determined by the jury, not to exceed fifteen million dollars ($15,000,000);

d. For compensatory damages for Ms. Sorensen and Mr. Strickland in amounts determined by the jury, not to exceed five million dollars ($5,000,000), for each;

e. That Plaintiffs be granted interest and costs as allowed by law; and

f. For such other and general relief to which the Plaintiffs are entitled under the circumstances.

Respectfully submitted,

By: /s/ Grant E. Mitchell
    Weldon E. Patterson, TN BPR #13608
    Grant E. Mitchell, TN BPR #036878
    BUTLER, VINES, AND BABB, P.L.L.C.
    2701 Kingston Pike, Knoxville, TN 37919
    Ph: 865.637.3531; Fax: 865.637-3385
    wPatterson@bvblaw.com; gMitchell@bvblaw.com
*Co-Counsel for Plaintiffs*
&

    Terry L. Miller, GA State Bar No. 508450
    Jason D. Connell, GA State Bar No. 948940
    MITCHELL & MITCHELL, P.C.
    108 S. Thornton Ave., Dalton, GA 30720
    Ph: 706.278.2040; Fax: 706.278.3040
    terrylmiller@mmfirmlaw.com; jason@mmfirmlaw.com
*Co-Counsel for Plaintiffs (applying for admission* PHV*)*[1]

---

[1] Both for Mr. Miller & Mr. Connell, LR83.5(b) Motions for Admission *Pro Hac Vice* are being filed promptly following the filing of this Complaint and assignment of a docket number for this matter.